[No. 35035. Department Two. January 28, 1960.]

C. L. STICKNEY *et al., Respondents,* v. HAROLD E. KERRY *et al., Appellants.*[1]

*O'Leary, Meyer & O'Leary,* for appellant.

*Brodie & Fristoe,* for respondents.

ROSELLINI, J.—While there are two plaintiffs and four defendants named in the title to this action, C. L. Stickney is the only plaintiff and Ruth B. Kerry the only defendant involved in this appeal.

The question in the case is: In a partnership accounting, can a nonpartnership debt owed by a bankrupt partner to one of the other partners be paid to him out of the bankrupt partner's interest?

[1]Reported in 348 P. (2d) 655.

The partnership involved in this litigation was composed of four members, one of whom, Stickney, leased the partnership property, known as the West Tenino Lumber Company, and employed another partner, Harold E. Kerry, to manage it. The latter held a 51.13 per cent interest in the partnership, and the former, his employer, held an interest of 19.32 per cent.

Under the terms of the employment contract, Kerry's salary was to be determined on the basis of the earnings of the business.

During the course of this employer-employee relationship, Kerry was advanced $7,000 in excess of his earnings. On October 2, 1953, he and the community composed of himself and Ruth B. Kerry filed their petition in bankruptcy in the United States District Court for the Western District of Washington, Southern Division, and on October 5, 1953, were adjudged bankrupt. They included the $7,000 owing to Stickney as a debt in their schedule of unsecured creditors, and listed as an asset their interest in the partnership. Thereafter the referee entered findings of fact and conclusions of law to the effect that the trustee in bankruptcy was, on dissolution of the partnership, "entitled to receive all right, title and interest in assets distributed" as the result of Kerry's interest in the partnership. This ruling was later affirmed by the judge of the district court.

Subsequently, Ruth B. Kerry purchased from the trustee in bankruptcy all of the right, title and interest of H. E. Kerry in the partnership and, on March 19, 1954, entered into an earnest-money agreement with the other three partners for the purchase of their interests. At that time Stickney claimed the right to have the $7,000 owed him by Kerry set off against a $9,782.85 debt which he owed the partnership for rent. Mrs. Kerry disputed his right to do so, and it was agreed that this matter would be settled in court. This action is the result. Before trial, however, Stickney's debt for rent was paid by setting off other credits against it. So the question before the court was whether he was entitled to receive $7,000 out of Kerry's

interest in payment of Kerry's nonpartnership debt to him. The trial court answered this question in the affirmative.

Whether a nonpartnership obligation can be enforced in an accounting and dissolution proceeding, is a question which has not been determined in this jurisdiction and on which courts in other jurisdictions are not in agreement. *Cook v. Vennigerholz,* 44 Wn. (2d) 612, 269 P. (2d) 824. But the plaintiff cites the case of *Pendleton v. Beyer,* 94 Wis. 31, 68 N. W. 415, wherein the Wisconsin court allowed partners holding nonpartnership claims against an insolvent partner who sued for an accounting to collect those claims out of any amount which might be found owing to the insolvent as a result of his interest in the partnership.

In 2 Barrett & Seago, Partners and Partnerships, 204, § 4.1, it is said:

"Where a partner who is indebted to the partnership is insolvent, a court of equity may compel a set-off of personal claims of one partner against his insolvent partner. This is an exception to the ordinary rule that personal debts as between the partners may not be brought into the settlement of partnership affairs. The right of set-off in this case is an equitable one that arises because of the insolvency of one or more partners. This rule is admittedly a harsh one with respect to the individual creditors of the insolvent partner other than his partners. Some doubt must be expressed that this rule would be followed in all jurisdictions."

We think it plain that the rule, whatever its efficacy may be under certain circumstances, has no application where the insolvent partner has been adjudged a bankrupt. It is true that, as the plaintiff says, while the filing of a petition in bankruptcy works an immediate dissolution of the partnership, the trustee in bankruptcy does not acquire jurisdiction of the partnership property for purposes of winding up the partnership affairs if one or more of the partners is solvent. But the partner or partners who wind up the business, and account for the property, have no right to distribute any part of the interest of the bankrupt partner, once the partnership liabilities have been

paid and that interest determined. The supreme court of the United States has made this clear:

"Bankruptcy, it is said, when decreed by a competent tribunal, dissolves the copartnership, but the joint property remains in the hands of the solvent partner or partners, *clothed with a trust to be applied by him or them to the discharge of the partnership obligations and to account to the bankrupt partner or his assignees for his share of the surplus.*" *Amsinck v. Bean,* 89 U. S. 395, 22 L. Ed. 801. (Italics ours.)

In accord are *Brandt & Brandt Printers v. Klein,* 220 F. (2d) 935, and *Callaghan v. Khoury,* 90 N. H. 389, 10 A. (2d) 241. And, see, annotation, 29 A. L. R. 45.

"  .   .   . There can be no question but that  .  .  . the jurisdiction of the bankruptcy court, at least so far as the distribution of the estate is concerned, is exclusive." *In re Community Fuel Corp.,* 291 Fed. 689, citing *Cruchet v. Red Rover Mining Co.,* 155 Fed. 486. See, also, *Gibbons v. Dexter Horton Trust & Sav. Bank,* 225 Fed. 424, and 1 Collier on Bankruptcy (14th ed.) 233-235.

How then could the superior court, in a collateral proceeding rightfully order the payment of a *nonpartnership* debt out of the bankrupt's interest in the assets?

Stickney, as an unsecured creditor, was entitled to no more than his proportionate share of his bankrupt debtor's property.

■ "That 'the theme of the Bankruptcy Act is equality of distribution' is a fundamental and long recognized principle." 3 Collier on Bankruptcy (14th ed.) 741. This action is nothing more than an attempt to circumvent the requirements of that act, and to obtain payment of a debt in full at the expense of the other creditors of the bankrupt. The court was without jurisdiction to grant such relief. Its lack of jurisdiction was acknowledged in an order which the court entered June 1, 1957, which provided:

"It is further ordered that any cause of action which the plaintiffs may have against Harold Edwin Kerry and the community of Harold Edwin Kerry and Ruth B. Kerry, his wife, accruing prior to October 2, 1953, is hereby dismissed."

This was itself a recognition by the court that payment of pre-existing debts of the bankrupt was a matter solely within the jurisdiction of the Federal court. Nevertheless it proceeded to enter judgment in favor of Stickney. But the only theory on which that judgment was entered, was that equitably he was entitled to payment of his debt out of Kerry's partnership interest, as that interest was determined in the accounting. If there was such a right, its origin antedated the petition in bankruptcy. Neither the pleadings nor the evidence reveals any cause of action accruing subsequent to October 2, 1953. It is not contended that there was ever a new promise to pay the debt on the part of either the debtor or his wife, who is the only defendant in this action; and there is nothing in the record which would tend to support such a contention.

The judgment is reversed and the action dismissed.

WEAVER, C. J., HILL, and HUNTER, JJ., concur.

MALLERY, J., dissents.

---

March 16, 1960. Petition for rehearing denied.